CLERK, U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY 2014 DEC 15  AM 6 06

Karin Wolf                               )
           Petitioner,                )
                            )
   -against-                        )
                            )
Edward Crane                             )
                            )
           Respondent.               )
..................................................................................)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 USC § 2254

The undersigned Petitioner reserves her rights and respectfully alleges upon information and belief that:

1. Petitioner, Karin Elena Wolf, resides in the State of New York; physical address to be kept confidential pursuant to the Address Confidentiality Program; and is the biological mother of the following children, who are the subjects of this application:

               Name of Child                       Date of Birth

2. Respondent Edward James Crane resides at 5 Rock Road, Glen Rock, NJ 07452.

3. Petitioner has requested the return of the children from Respondent and Respondent has failed and refused to return the children to the custody of the Petitioner.

4. Respondent never proved paternity or parentage, nor supplied a Certificate of Parentage.

5. Petitioner's maiden name is on the children's birth certificates.

6. Petitioner hereby challenges NJ Rule 5:14-1 pursuant to FRCP Rule 5.1 and asks the court to apply strict scrutiny in this matter.

1

7. During the last five years, each child who is the subject of this proceeding resided at

| Name | Address | Duration (from/to) |
|------|---------|--------------------|



8. The name and present address of the person(s) with whom each child resided during the past five years are as follows:

| Name | Address | Duration (from/to) |
|------|---------|--------------------|
| Edward Crane | 5 Rock Road, Glen Rock, NJ 07452 | 12/2012 – present |

(also Luciana Coutinho, Matteas Treubig, Marleni Coutinho, and Plinio Coutinho w/ Respondent)

| Karin Wolf | *to be kept confidential | 09/2006 - 12/2012 |
| Elena Wold (w/ Petitioner) | *to be kept confidential | 01/2011 - 02/2012 |

9. The subject children are Native-American children subject to the Indian Child Welfare Act of 1978 (25 U.S.C. §§ 1901-1963).

10. The Petitioner and subject children are Puerto Rican by descent and are thus eligible for a Writ of Amparo, or recurso de amparo.

11. The custody or visitation of the children was agreed upon in the following instruments:

Stipulation and Custody Agreement confirmed by Bergen County Family Court:

      a.     Consent Order signed 01/17/2007 by Petitioner and Respondent Edward Crane (E.C.)

      b.     Property Settlement Agreement signed 05/22/2007 by Petitioner and Respondent E.C.

      c.     Judgment of Divorce under Extreme Cruelty, dated 05/22/2007

## STATEMENT OF FACTS

12.   The above children are being confined in the custody of the Respondent Edward Crane at 5 Rock Road, Glen Rock, NJ 07452; and have been since a temporary order was issued on December 24, 2012 and an order was entered on August, 30, 2013, Superior Court of New Jersey, County of Bergen, Chancery Division, Family Part, Docket # FM-02-439-07, by actors of the State of New Jersey under color of law pursuant to 18 USC § 242.

13.  Respondent wrongfully and unlawfully removed and withheld the children from the custody of the Petitioner in that Respondent violated the Petitioner and children's due process rights, subject matter jurisdiction, and violated the Consent Order for custody dated January 17, 2007, which was incorporated into the Judgment of Divorce and the Property Settlement Agreement dated May 22, 2007 (see attached documents).

14.  Respondent committed fraud upon the court and racketeering in obtaining and administering a post-divorce, illegal custody order, void *ab initio* to February 1, 2011, pursuant to the Federal RICO statutes coded at 18 USC 1961-1968 and 42 USC 1983, *inter alia,* for which Petitioner has brought a class-action lawsuit in the U.S. District Court, District of New Jersey, against the Respondent, Gov. Chris Christie, the New Jersey Judiciary, DYFS n/k/a DCP&P, et al. Approximately 200 other parents who are similarly situated have alleged predicate acts of RICO activity; and due process and civil rights violations in the Family Courts of the State of New Jersey.

## Subject Matter Jurisdiction, Constitutional Violations, and Treason

15. Petitioner asserts that Bergen County Family Court did not have subject matter jurisdiction to render a custody decision and that any orders made by that court as of Feb. 1, 2011 are void *ab initio.*

16. The court refused to produce the judges' Oath of Office pursuant to Notice Demand, which constitutes fraud pursuant to U.S. v. Tweel; activates estoppel, pursuant to Carmine v. Bowen; indicates the judges are impersonating State officers, and conducting mail fraud in violation of 18 USC 1341, the latter of which is a felony federal offense Petitioner is required by 18 USC 4 to report to a judge or other officer of the United States, which is done here.

17. Petitioner asserts and argues that any Orders based on predicates act(s) of fraud by and upon the Court; and violations of due process are void *ab initio*.

18. Petitioner asserts and argues that the Bergen County Family Court unlawfully issued a new custody Order on 08/30/2013 in violation of the Federal case law of *Troxel v. Granville, Santosky v. Kramer, Griswold v. Connecticut,* etc. and that Courts are not to enter the family realm minus exigent circumstances. (*Petitioner has raised Federal questions and the Federal anti-injunction statute to protect its judgments, with the U.S. District Court, District of New Jersey, Newark, Docket #14-cv-5985.)

19. Petitioner asserts that because her and her children's due process rights were violated, the Bergen Court acted without subject matter jurisdiction over the res.

20. The Bergen County Family Court dismissed Petitioner's attorney literally 15 minutes before trial began and forced her to proceed unrepresented involuntarily; willfully placing her in an untenable predicament. Given that child custody proceedings are quasi-criminal and that this case did indeed move as a criminal case *de facto*, the Petitioner had a right to legal representation and the children had a right to legal representation.

21. The Bergen County Family Court barred the Petitioner from getting an expert when she requested it several times, despite the provisions of NJ Rule 5:3-3(h).

4

22. Judge Escala of the Bergen County Family Court refused to allow the Petitioner to present any witnesses and crucial evidence at trial.

23. Judge Escala chastised Petitioner for objecting at trial, effectively shushing her.

24. The Bergen Court allowed the Respondent E.C. and his attorney to violate the Rules of Evidence.

25. The Bergen Court never appointed a lawyer for the children, pursuant to NJ Rule 5:8A, despite several requests made by the Petitioner, who was forced to proceed at trial unrepresented involuntarily; directly in conflict with the American Bar Association's *A Judge's Guide: Making Child-Centered Decisions in Custody Cases* -

http://apps.americanbar.org/legalservices/probono/childcustody/judges_guide.pdf.

26. The Bergen County Family Court refused to conduct an in camera interview of the children pursuant to NJ Rule 5:8-6, despite the Petitioner's due process requests on behalf of the children several times.

## Judge Gerald C. Escala acted further in clear absence of jurisdiction as a matter of law

27. The trial judge, Judge Escala, rendered an Order that modified custody and parenting time while an appeal was pending, in clear absence of subject matter jurisdiction, as a matter of law:

   • Following the Order on Custody entered on August 30, 2013 by Judge Escala, Petitioner filed a Motion for Reconsideration, which was denied on Oct 24, 2013 by Judge Escala.

   • Following that order, Petitioner filed a timely Notice of Appeal on November 19, 2013.

   • Judge Escala signed an Order July 9, 2014 and again on July 22, 2014, suspending all of Petitioner's parenting time with the children, placing the Petitioner on supervised visits, and barring her from contact with them.

   • The Appellate Court retained jurisdiction during the period when those Orders were issued.

28. Pursuant to the expressed language of NJ Rule 2:9-1, the aforementioned appeal deprived the Bergen

5

County Family Court of jurisdiction to hear Respondent E.C.'s Motion. It is, therefore, that the Bergen County Family Court lacked jurisdiction over Respondent's Motion; and, as such, Respondent's motion was procedurally improper and should have been denied in its entirety as a matter of law because the Bergen Court lacked jurisdiction to hear it.

29. Furthermore, Petitioner put Judge Escala, Edward Crane, and his attorney Peter Van Aulen on Notice that she would be filing a RICO lawsuit in open court on July 22, 2014, which activated estoppel.

30. Petitioner expressed that they were committing criminal acts, as was her duty pursuant to 18 U.S. Code § 4 - Misprision of felony. At that point, and long before, Judge Escala had an obligation to recuse himself.

31. New Jersey law is clear, "The ordinary effect of the filing of a notice of appeal is to deprive the trial court of jurisdiction to act further in the matter unless directed to do so by an appellate court, or jurisdiction is otherwise reserved by statute or court rule." *Manalapan Realty v. Manalapan Township Comm.,* 140 *N.J.* 366, 376 (1995) (post-judgment trial court proceedings were not properly on appeal); *accord* Sylvia B. Pressler, "Rules Governing The Courts Of The State Of New Jersey," R. 2:9-1, cmt. 1 at 606 (2009) ("Except to the extent of enforcement or correction and except as otherwise expressly provided for by rule, the ordinary effect of the filing of the notice of appeal is to deprive the court below of jurisdiction to act further in the matter under appeal unless directed to do so by the appellate court.").

32. This principle has been applied in case after case and the New Jersey appellate courts have repeatedly cautioned that a trial court may not issue orders following the filing of a notice of appeal. See, *e.g., Kiernan v. Kieran,* 355 NJ. Super. 89, 94 (App. Div. 2002) (finding that trial court properly denied motion for reconsideration for lack of jurisdiction when appeal was pending); *Sparwick Contracting,*

6

*Inc. v. Tomasco Corp.,* 335 N.J. Super. 73, 77 n.3 (App. Div. 2000) (finding that trial court properly declined motion for dismissal in light of appeal); *Gordon v. Rozenwald*, 380 N.J. Super. 55, 64 & n.2 (App. Div. 2005) ("Rozenwald appealed, and Gordon filed a cross-appeal, which she dismissed after the trial court improperly considered and granted her motion for reconsideration... Rozenwald's appeal deprived the trial court of jurisdiction to reconsider its order. R. 2:9-1(a)."); *Accardi v. Accardi,* 369 N.J. Super. 75, 83-84 & n. 1 (App. Div. 2004) (describing trial court as "apparently not recognizing that she lacked jurisdiction to address the issues pending appeal"; citing Rule 2:9-1).

33. NJ Rule 2:9-1(a) provides that, except for very limited exceptions, "supervision and control of the proceedings on appeal or certification shall be in the appellate court from the time the appeal is taken or the notice of petition for certification is filed." Nevertheless, the same rule provides that the trial court "shall have continuing jurisdiction to enforce judgments and orders pursuant to R. 1:10 and as otherwise provided." And the appellate court can entertain a motion for directions to the lower court or agency to modify or vacate any order. R. 2:9-1(a). This rule means, among other things, that a trial court does not have jurisdiction to rule on the within motion once Defendant filed a notice of appeal. *Kiernan v. Kiernan*, 355 N.J. Super. 89, 94 (App. Div. 2002).

34. Respondent cannot argue *Carlucci v. Carlucci*, 265 N.J. Super. 333, 335 (Ch. Div. 1993) and *Van Horn v. Van Horn*, 415 N.J. Super. 398, 410 (App. Div. 2010).

35. In *Carlucci*, the court reasoned,

> If the new issue does not have the capacity to affect (i.e. render moot) the pending appeal, it is a "new case" and the pending appeal (of an unrelated "case") does not preclude the trial court from considering the "new case". This analysis leads to the general rule as set out previously. Given this analysis, the new action is presented first to the trial court, which must decide if the issue

7

presented affects the issues on appeal or if it is collateral to them. The term "affect" should be read

to require a determination if the result on the new issue would render the appeal moot. This should

be a relatively simple process requiring only a comparison of the Notice of Appeal and the

pending application. If either party believes the trial court has erred in that initial decision, a

motion may be made pursuant to the last sentence of R.2:9-1(a) to modify or vacate that order.

*Carlucci*, supra, 265 N.J. Super. at 339-340.

36. The *Carlucci* decision did not provide authority for the trial court to proceed in this matter, without

the Appellate Division first entering a remand Order providing jurisdiction to the trial court. *Carlucci*

was a trial court level decision that has been expressly disapproved by the Appellate Division in

*Kiernan v. Kiernan*, 355 N.J. Super. 89, 93-94 (App. Div. 2002). Furthermore, the court in *Carlucci*

relied on an annotation in the 2003 version of the Rules of Court, which has been subsequently

removed from the Rule. The facts presented in *Van Horn* are substantially different than those

presented in this matter. Neither *Carlucci*, nor *Van Horn* provides satisfactory authority, which would

have allowed the trial court to move forward and substantively consider Respondent E.C.'s motion.

37. Pursuant to NJ Rule 2:2-3, Petitioner filed her appeal of the court's custody decision as of right.

38. NJ Rule 2:9-1 titled "Control Prior to Appellate Disposition," provides,

Except as otherwise provided by R. 2:9-3, 2:9-4 (bail), 2:9-5 (stay pending appeal), 2:9-7 and

3:21-10(d), the supervision and control of the proceedings on appeal or certification shall be in the

appellate court from the time the appeal is taken or the notice of petition for certification filed. The

trial court, however, shall have continuing jurisdiction to enforce judgments and orders pursuant to

R. 1:10 and as otherwise provided.

8

39. The jurisdiction of the entire matter was in the Appellate Division at the time of the July 9 and July 22, 2014 Orders by the Judge Escala of the trial court.

40. There is a maxim of legislative interpretation that the express mention of one thing implies the exclusion of another. See *Gangemi v. Berry*, 25 N.J. 1, 11 (1957). While courts are cautioned to apply this maxim in a fashion that realizes, rather than defeats, the purpose of the legislation, see *State v. DiCarlo*, 67 N.J. 321 (1975), given the general restriction set forth in the Rules of Court that the trial court does not retain jurisdiction in "proceedings on appeal."

41. If the New Jersey Supreme Court intended for a trial court to retain jurisdiction in a circumstance such as was presented in this matter, the Rules of Court would specifically provide for the trial court to retain jurisdiction. Without that direction in the New Jersey Rules of Court, or from the Appellate Division or New Jersey Supreme Court granting jurisdiction to the trial court under the circumstances, it was inappropriate for the trial court to move forward and address Respondent E.C.'s motion on a substantive basis.

42. Petitioner concludes that the Order to Show Cause filed by Respondent E.C. and Peter Van Aulen on July 9, 2014 was not only procedurally improper, but **done purposefully on an *ex parte* basis with the trial judge, knowing full well he would act as a rogue judge and accept a bribe as he has a history of doing so.**

43. Based on the foregoing, Petitioner respectfully submits that Judge Escala's July 9, 2014 and July 22, 2014 orders modifying custody and parenting time be voided in their entirety as a matter of law.

### Petitioner exhausted her remedies on appeal involuntarily thereafter

44. The New Jersey Courts subsequently and effectively barred petitioner from an appeal on August 31, 2014, because she could not afford the $10,000 for transcripts and provide them to the appellate

court.

45. Petitioner could not afford the transcripts because the Respondent willfully put her and the children in an untenable financial predicament and drove her into shadow bankruptcy.

46. Petitioner asked the Appellate Court if she could provide the audio recordings in lieu of transcripts, since that was under $100. The court denied this request.

47. Petitioner asked the Appellate Court if she could have someone other than King Transcripts do the transcripts and the court said it would not accept that either.

48. Petitioner would have been able to get pro bono help through DV Leap and/or Child Justice, but only if she could get the transcripts.

49. Petitioner applied to the Appellate Court for the pro bono pilot program, but was turned away because even though she qualified as a victim of domestic violence and it was a child custody matter, she was "trying to recuse a judge." This was a gross miscarriage of justice and policy here

50. Moreover, the particular judge Petitioner was trying to recuse, Judge Gerald C. Escala, is known for taking a bribe in the *Denike v. Cupo* case and likely others.

51. In *M.L.B. v. S.L.J.,* 519 U.S. 102, the court stated, "just as a state may not block an indigent petty offender's access to an appeal afforded others, so Mississippi may not deny M.L.B., because of her poverty, appellate review of the sufficiency of the evidence on which the trial court found her unfit to remain a parent." The court stated that due process could not be halted by a lack of funds in a case where the termination of parental rights was at risk. A case that contributed to the court's opinion was *Griffin v. Illinois*, 351 U.S. 12 (1956). Before that case, only convicted felons sentenced to death would have access to an appellate review if they were unable to pay for transcripts. The court then decided that all criminal cases, even noncapital ones, would be allowed the same right in accordance

10

with the Fourteenth Amendment. The other largely influential case was *Mayer v. Chicago*, 404 U.S. 189 (1971), which decided that any offence, even "quasi-criminal" ones in nature, may be appealed regardless of financial means. M.L.B. argued that what was at stake for her was far greater than what was at stake for a "quasi-criminal" and that her right to appeal should in no way be determined by her wallet. The court made their ruling based on that argument and reversed the one made by the Mississippi Supreme Court.

52. The post-divorce custody case at issue here was quasi-criminal and moved like a persecution and prosecution of the Petitioner mother because she exercised her right to live free from harassment and false imprisonment; and tried to protect her children and herself from child abuse and domestic violence, the existence of which was proven by Petitioner obtaining a fault-based divorce for Extreme Cruelty, all of which was addressed in the two Complaints for divorce and pre-divorce motions. The Respondent E.C. should have been barred by estoppel and res judicata, but the Bergen Court, in the course of racketeering and conducting a corrupt enterprise, let him and his attorney proceed under manufactured and highly controversial allegations of Richard Gardner's Parental Alienation Syndrome, which is the quintessential go-to for abusers and pedophiles. Gardner's theories have been repeatedly rejected by the American Psychological Association for inclusion in the Diagnostic and Statistical Manual of Mental Disorders, now in its 5th Edition: DSM-5.

53. Petitioner was interrogated by Respondent's hired gun, Dr. Judith Brown Greif, Respondent E.C.'s attorney, and the court; at the risk of losing life and liberty, including consortium with her children; during this *de facto* criminal proceeding. It implicated fundamental and constitutional rights, subjecting the Law involved to strict scrutiny by the judiciary, and was punitive in nature. Because of that, they were subject to the Miranda warning enunciated under the legal doctrine in *Miranda v.*

11

*Arizona*, 384 U.S. 436 (1966). **Petitioner was never read her Miranda rights, nor were the children who are the subjects of this proceeding.**

54. Petitioner went from being the primary caregiver and stay-at-home mom, and primary attachment figure during the marriage; to the parent of residential custody and sharing joint legal custody; to losing residential custody and legal custody, which, though not a termination of parental rights, is effectively so, or *de facto*.

55. Petitioner and Respondent E.C. had originally signed a Consent Order regarding child custody and visitation on 01/17/2007. They signed that into further effect when they signed the Property Settlement Agreement (PSA) on 05/22/2007, thus incorporating the Consent Order into the bargained-for terms of that post-nuptial contract, which made the issues of divorce and child custody final, pursuant to Article II of the PSA by the use of mandatory language of the word "shall."

56. There were no exigent circumstances that warranted the State entering the family realm.

57. The circumstances under which a new custody Order was administered were via fraud and barratry.

58. The averments of Petitioner's Federal RICO Complaint are attached and provide an in-depth factual and procedural history to further elaborate herein.

59. Under Federal law, which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." *Elliot v. Piersol*, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828).

12

60. The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. By law, a judge is a state officer. The judge then acts not as a judge, but as a private individual (in his person).

61. The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401 (1958).

62. Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. The judge is engaged in acts of treason. Having taken at least two oaths of office to support the Constitution of the United States and the Constitution of the State of New Jersey, any judge who has acted in violation of the Constitution is engaged in an act or acts of treason (see below). If a judge does not fully comply with the Constitution, then his orders are void, In *re Sawyer*, 124 U.S. 200 (1888), he/she is without jurisdiction, and he/she has engaged in an act or acts of treason.

63. Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. *U.S. v. Will*, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)

64. Any judge or attorney who does not report the above judges for treason as required by law may themselves be guilty of misprision of treason, 18 U.S.C. Section 2382.

## UCCJEA Violations

65. Respondent failed to file the mandatory UCCJEA affidavit upon the initiation of a motion for custody on February 01, 2011, pursuant to NJ § 2A:34-73 and NY § 76-h. The Petitioner and children were living in the State of New York at the time that motion was filed. The Bergen Court proceeded without the UCCJEA affidavit throughout the entire proceedings through trial, thus failing to invoke subject matter jurisdiction.

66. The parties entered into a Property Settlement Agreement on May 22, 2007 that granted consent to the Petitioner to remove the children to the State of New York and by extension, New York jurisdiction. Article II, (c) 6, states:

> "Removal: The custodial parent has agreed not to relocate the children outside a 40 mile radius of the Husband's present residence in Teaneck, NJ. It is agreed that the Wife shall not relocate to either Nassau or Suffolk counties in New York State."

67. These were bargained-for terms that the Respondent violated, inter alia.

## Indian Child Welfare Act (ICWA)

68. The Bergen County Court of the Superior Court of the State of New Jersey violated the Indian Child Welfare Act (ICWA). The Bergen Court never asked if the children were Native American as required, nor did it provide Notice.

69. The proceedings commenced post-divorce, not during a divorce as 25 USC § 1903(1) defines. Even if one were to argue that the spirit of the law was meant to apply to all family disputes, it would be a question for a Tribal Court to determine that on a case basis.

14

70. The ICWA was enacted to keep Indian families intact. It is not to be misapplied to circumvent tribal law in order for State courts to do what the ICWA was trying to prevent in the first place. That would be a gross miscarriage and perversion of its purpose and the spirit of the law.

71. In other words, manipulating the proceedings by giving child custody to an abusive parent, while violating due process rights of the non-abusive parent, so that it can set up a window of opportunity for DYFS n/k/a DCP&P to place the children in foster care and other programs to receive Federal funding and is not proper. So-called child protective agencies have a known history of violations across the country, which warranted the need for tribal legislature.

## Federal Funding Violations and Motives

72. The State of New Jersey, Gov. Chris Christie, the NJ Judiciary, and DCP&P manipulate family court proceedings to extract Federal funding in violation of Title IV of the Social Security Act, which happened here.

73. Respondent the State of New Jersey and Gov. Chris Christie, the NJ Judiciary, and DCP&P have conspired to falsify and submit documents under Title IV D 45 C.F.R. § 300 et seq. of the Social Security Act with willful intent to defraud the United States Federal Government to collect incentives and hand out as "Bonuses" by welfare entitlements.

74. The State of New Jersey, Gov. Chris Christie, the NJ Judiciary, and DCP&P have full knowledge that recipients of child support/alimony must be receiving government assistance, welfare, etc. to be eligible to "collect" and "receive" child support under Title IV D of the Social Security Act.

75. They participate in the filing of false Title IV D applications to show an obligee of child support/alimony as "receiving" government assistance with intent to extort money from the Federal Government.

15

76. They participate in the fraud to receive dollar for dollar from the Federal Government of all child support/alimony "collected" by the obligor of the alleged child support debt.

77. They participate in a "double dipping" scheme by filing false claims against the Federal Government as "uncollected" child support/alimony to collect another 60 cents on the dollar with full knowledge that the debt has also been submitted as "collected." The public documents to support this allegation have been withheld from the public and are therefore a clear violation of the New Jersey Open Public Records Act.

78. They have full knowledge that the money received through Title IV D as "uncollected" must be sent directly to the obligee of child support and alimony, but instead they intentionally withheld this money from the obligee, and put it in their pockets as "bonuses" thereby committing theft.

79. The state receives a check and it is to be sent to the obligee of the child support order, this doesn't happen, the state deems it unclaimed and places it into a fund and administers it to the judiciary. See N.J.S.A 46:30b-74.

80. The Title XX Social Service Block Grant is authorized by Congress as an entitlement to the states. At times Congress has changed funding through the appropriations process. The funds are administered by the state social service agency and there is great flexibility in how the funds can be expended. Most states use these funds for a combination of childcare, child welfare and services to the elderly.

81. The amount of money granted to each state is based on the state's proportional population, which would explain the motive behind the State of New Jersey confining people in New Jersey, which happened here; and to Rachel Alintoff (case no. 15-cv-1072) and the Bridgegate victims, all of whom are claiming False Imprisonment in their suits against Gov. Christie and his Administration.

82. There are minimal reporting requirements. A total of $2.38 billion was provided nationally in FY

16

1996 but has been reduced in successive years to a level of $1.7 billion by FY 2005.

83. At the end of 2005 Congress approved a one-year increase of $550 million designated for states affected by the hurricanes. The funds were a re-allocation of dollars previously appropriated to the Federal Emergency Management Administration (FEMA) final funding was $2.2 billion.

84. Thus, the State of New Jersey had an incentive to keep                    ie in the State of

. New Jersey, as custody was "temporarily" transferred to Respondent E. C. directly after Hurricane Sandy, whereupon Petitioner moved back to New York and was barred from removing the children from New Jersey, despite the provisions of the Property Settlement Agreement, of which Petitioner was well-within the parameters.

85. Moreover, a Temporary Restraining Order against Defendant Edward Crane was issued directly following, where clear and convincing evidence of child abuse by Defendant Edward Crane was heard via audio recording at the TRO/FRO hearing in Jan-Feb 2013, during which Judge DeLorenzo was visibly disturbed upon hearing that recording and made it explicitly known on the record; and encouraged Karin Wolf to call DYFS (DCP&P).

86. Almost immediately after, Judge DeLorenzo was removed as the trial judge, Judge Escala was assigned to do the trial, and that very same evidence - the audio recording and the transcript of the TRO/FRO hearing - was barred by Judge Escala from being admitted into evidence by Karin Wolf at the custody trial.

**Judge Escala and Judge Ellen Koblitz in collusion**

87. When Petitioner Karin Wolf made an Application for Permission to File an Emergent Appeal with the Appellate Division, it was routed to Judge Ellen Koblitz. Petitioner believes Judge Escala and the Bergen Court handpicked this appellate judge.

88. Judge Escala has a well-known reputation of corruption. Jeffrey Pocaro, Esq. stated to Petitioner Karin Wolf, that Judge Escala "took a bribe" in the *Denike v. Cupo* case.

89. Judge Escala has been sued no less than six (6) times in Federal Court, three (3) of which he has been sued alongside Judge Ellen Koblitz as a co-defendant for constitutional violations:

> 2:14-cv-05985-MCA-JAD (this case)
>
> 2:08-cv-05701-JAG-MCA
>
> 2:95-cv-03523-AMW
>
> 2:13-cv-03451-CCC-MF
>
> 2:97-cv-04698-AJL
>
> 2:05-cv-04746-PGS-RJH

90. Whether one wants to use the scientific analysis of Occam's Razor – that the simplest explanation tends to be the right one; or one wants to simply use the laymen's analysis – If it walks like a duck and talks like a duck, it probably is a duck; it is easy to see how a reasonable person would conclude that Judge Escala and his common denominator Ellen Koblitz are indeed corrupt and that these six (6) cases are a representative sample. There are surely more people who wanted to file Federal suits, but for some reason or another were unable.

91. Petitioner Karin Wolf also believes that some of these suits were dismissed or suits were never brought because the Petitioners and would-be Petitioners in those cases were unable to effectively undertake those suits as they may not have been able to understand how to proceed or had the necessary resources to articulate what had happened to them and how to apply the law; or they could not find an attorney willing to sue a judge. This is a gross miscarriage of justice.

92. No exigent circumstances existed to warrant the children's removal from the Petitioner. Petitioner is a

fit parent, was the primary caregiver and primary attachment figure, and has no history of alcohol or drug abuse. The children were very happy living with their mother.

93. Respondent Edward Crane has subjected the children and the mother to years of domestic violence. Petitioner obtained a fault-based divorce for Extreme Cruelty pursuant to N.J.S.A. 2A:34-2(c) against the Respondent E.C. due to domestic violence, for which she fled the marital home with the children on September 29, 2006.

## The children have expressed over and over that they want to live with their mother

94. The children do not want to live with the Respondent E.C. and are being held against their will. The children want to live with the Petitioner.

95. The Respondent and Defendants in the Petitioner's RICO action have done a tremendous amount of damage to these children.

## REQUEST FOR RELIEF

WHEREFORE, Petitioner requests that a Writ of Habeas Corpus and/or Order be immediately issued for the Petitioner to retrieve her children;

or

A Writ of Habeas Corpus be directed to the Respondent, commanding the Respondent to produce the children in this Court, in order that Petitioner may be given the custody of her children.

## CERTIFICATION

I declare under penalty of perjury that I am the petitioner, that I have read this petition, and that the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

19

_____

Petitioner                              Karin Wolf
                                        Without Prejudice UCC 1-207


## VERIFICATION

STATE OF NEW YORK          )
                           )SS.:
COUNTY OF                  )

being duly sworn, says that she is the Petitioner in the above-

named proceeding and that the foregoing petition is true to her own knowledge, except as to matters

therein stated to be alleged on information and belief, and as to those matters she believes it to be true.


Subscribed and sworn to before me          Petitioner,

this    day of                             Without Prejudice UCC 1-207


(Deputy) Clerk of the Court

Notary Public

20

Petitioner

Karin Wolf
Without Prejudice UCC 1-207

## VERIFICATION

STATE OF NEW YORK          )
                           )SS.:
COUNTY OF  New York        )

being duly sworn, says that she is the Petitioner in the above-named proceeding and that the foregoing petition is true to her own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters she believes it to be true.

Petitioner, sui juris

Subscribed and sworn to before me

this 27th day of February 2015

Without Prejudice UCC 1-207

~~(Deputy) Clerk of the Court~~

Notary Public

CHUN MEI WONG
Notary Public - State of New York
NO. 01WO6302113
Qualified in Kings County
My Commission Expires Apr 28, 2018

20

Karin Wolf, sui juris
P.O. Box 473
New York, NY 10163
Tel. 201-450-2192
karinelenawolf@gmail.com

, 2014 DEC 15   AM 6 07

March 6, 2015

Hon. Madeline Cox Arleo
Hon. Joseph A. Dickson
U.S. Federal Courthouse, Newark
50 Walnut Street
Newark, NJ 07102
F. 973-645-4549 VIA FASCSIMILE

Re: Permission to file a supplemental pleading; Notice; Docket corrections

Dear Judges Arleo and Dickson,

I am writing Your Honors to request permission to file a supplemental pleading; provide Notice; and correct an error in the docket. Please accept this letter brief in lieu of a more formal motion.

I have come to this court *sui juris* from the beginning. I have not indicated anywhere in my submissions that I am proceeding *pro se* in this matter. The semantics here are important. Please correct any Orders or docket information that labels me as *pro se*. I reserve all rights.

I submitted my opposition papers to the Defendants' Motions to Dismiss on March 2, 2015, however in light of recent events, a supplemental pleading is necessary. I ask that the Court take this into consideration with regards to the Motions to Dismiss as it pertains to the solidification of Federal jurisdiction. I will be submitting the supplemental pleading quickly hereafter.

It is my understanding that every sitting judge must have a copy of their executed Oath of Office in their chambers, ready to be produced on demand.

For the reasons stated herein, *inter alia*, I am naming Ione Kristy Curva and the NJ Attorney General as Defendants. Their obstruction in timely producing certified evidence of the judges' required Oath of Office is vital to the judges' claims for immunity, constitutes fraud pursuant to U.S. v. Tweel; activates estoppel, pursuant to Carmine v. Bowen; indicates the judges are impersonating State officers, and conducting mail fraud in violation of 18 USC 1341, the latter of which is a felony federal offense I am required by 18 USC 4 to report to a judge or other officer of the United States.

The Civil Investigative Demand by me as a private attorney general is necessary to do the due diligence that is required because the NJ Attorney General and others failed to do their jobs.

I do not object to giving the Defendants more time to prepare the materials requested in the Civil Investigative Demand. However, I do not concede that they deserve it. I will entertain neither complaints, nor objections considering the immense damage they've done to others.

Pursuant to Rule 5.1, I am presenting a constitutional challenge to several NJ State statutes. I may be bringing a *Bivens* action against Federal defendants, which may require naming the United States as *respondeat superior*.

This suit is now *qui tam* under the False Claims Act for Federal funding and regulatory violations by the State of New Jersey, which are explained in my recent March 2nd submission to the Court. It has also come to my attention that the judges and state officials are not reporting certain monies to the IRS, such as bonuses received through Title IV D and bribes; and that there is a link between foreclosures and the funding of the judges' retirement accounts.

Please note that the Federal Trade Commission in Washington D.C. has now opened a formal investigation into allegations of consumer fraud and unfair trade practices by family lawyers and service providers in the divorce industry, FTC file # 58748109. The U.S. Supreme Court has ruled that lawyers are subject to FTC regulation, *FTC v. Superior Court Trial Lawyers Assn.*, 493 U.S. 411 (1990).

I am hereby requesting consolidation of this case with those of Rachel Alintoff and Damaris Adamo, 15-cv-1072 and 15-cv-1073 respectively. I am hereby requesting that this case be moved to a District Court located outside of the parameters of the State of New Jersey pursuant to Freedom of Movement and forum *non conveniens*. Rachel Alintoff and I no longer feel safe entering the State of New Jersey and cannot egress fast enough from there. It is not only inconvenient geographically, but mentally when dealing with PTSD. Therefore, I request this accommodation under the Americans with Disabilities Act.

In addition, I will be bringing in several more women Plaintiffs in this suit, which support that this is a gender discrimination pursuant to the Equal Protection Clause and *Reed v. Reed*.


Respectfully submitted,

Karin Wolf (electronically signed)

Karin Wolf, sui juris, and on behalf of her children D.C. and G.C.
Without Prejudice UCC 1-308

Cc: All Attorneys of Record
     U.S. District Attorney, Paul Fishman

Signed hard copy by mail